UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| BASIL ROBINSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GREGORY PRIOR and F/V *KARRIE N*, )<br>IN REM, )<br>)<br>Defendants. ) | Civil No. 05-24-P-C |

**RECOMMENDED DECISION ON MOTION TO DISMISS**

On April 27, 2000, plaintiff Basil Robinson's hand was crushed while unloading trawl gear from the F/V *Karrie N*, which was tied at the Bay Lobster Wharf in Port Clyde. Robinson was performing this work in service to defendant Gregory Prior, the vessel's captain and owner. Robinson's injury was serious: in addition to the crushing of his hand he lost three fingers plus a portion of a fourth finger. According to Robinson, he has yet to reach maximum medical improvement and is continuing to treat for his injury. Robinson filed this suit in admiralty against Prior and against Prior's vessel, *in rem*, on February 4, 2005. Prior has moved to dismiss the action based on a statute of limitations defense. (Docket No. 15.) In his opposition memorandum, Robinson requests equitable tolling, relying exclusively on the allegations set forth in his verified amended complaint. (Docket No. 19.) While the issue is a close one, and the case for equitable tolling set forth in the verified complaint is certainly not iron tight, at this early pleading stage I recommend that the court **DENY** the motion to dismiss.

**Material Allegations**

In addition to his allegations concerning the circumstances of his injury, Robinson's verified amended[1] complaint alleges the following material facts respecting application of a statute of limitation to his claims:

> 11.    Before the date of the above described incident, Defendant Prior asked Plaintiff Robinson to sign a waiver agreeing that in the event Plaintiff Robinson was ever injured on the F/V *Karrie N*, he would not sue Defendant Prior.
>
> 12.    Plaintiff Robinson did not agree to sign this waiver, believing it was against the law to do so.
>
> 13.    Thereafter, Defendant Prior verbally threatened that if Plaintiff Robinson or any other crewman ever brought a claim against him, that person would not be able to live safely anywhere near Prior.
>
> 14.    Plaintiff Robinson took this threat seriously, believing that if he ever brought suit against Defendant Prior, his well being would be put in jeopardy.
>
> 15.    The above described threat caused Plaintiff Robinson to delay in filing suit until the date of his Verified Complaint.
>
> 16.    After the accident and after Plaintiff Robinson underwent surgical amputation of three fingers and a portion of his index finger on his left hand, Defendant Prior drove Plaintiff Robinson's wife Arlene Robinson to the hospital to pick up Robinson.
>
> 17.    During that ride Defendant Prior told Arlene Robinson that the accident involving Plaintiff Robinson was his (Prior's) fault and that he (Prior) would contribute to the payment of Plaintiff Robinson's medical bills.
>
> 18.    After the accident, Defendant Prior promised Plaintiff Robinson that he would pay half of Plaintiff's medical expenses and other costs in exchange for Plaintiff not bringing suit against the Defendant, and indeed Prior paid a portion of the medical bills.

---

[1] After the motion to dismiss was filed, plaintiff filed a motion to amend his complaint. Defendant did not oppose the motion. I gave plaintiff leave to file the amended complaint. That document is now the operative pleading (Docket No. 21).

19. In reliance on Defendant's above described promise, and out of concern over Defendant's previous threat, Plaintiff did not file suit against Defendant until the date of the Verified Complaint.

20. As the medical bills amassed, Plaintiff Robinson realized that the cost was too high for him to pay his agreed one half share, so he went to Defendant Prior and requested that Defendant pay him $1,000 to be used for filing for bankruptcy.

21. Defendant Prior promised to pay $1,000 for Plaintiff's bankruptcy filings in exchange for Robinson's promise not to file suit against him.

22. In reliance on Defendant's above described promise and continued concern over Defendant's threat, Plaintiff did not file suit against Defendant until the date of his Verified Complaint.

23. Defendant Prior paid for some of Plaintiff Robinson's medical expenses, but has refused to pay his half of the bills and other costs as he promised.

24. Defendant Robinson has never paid Robinson $1,000 to assist in a bankruptcy filing.

(Am. Verified Compl., Docket No. 21)  Robinson's amended complaint recites the following counts:

1. "Jones Act Negligence and Negligence Per Se";

2. "Unseaworthiness";

3. "Maintenance and Cure";

4. Punitive Damages/Attorney Fees;

5. Contract/Promissory Estoppel (re. promise to pay half of medical bills);

6. Equitable Estoppel;

7. Contract/Promissory Estoppel (re. promise to pay $1000);

8. An "*in rem*" claim against the *Karrie N*.

## Discussion

Pursuant to 46 U.S.C. § 763a (Supp. 2004): "Unless otherwise specified by law, a suit for recovery of damages for personal injury or death, or both, arising out of a maritime tort, shall not

3

be maintained unless commenced within three years from the date the cause of action accrued." Prior contends that the action is time barred because it was filed roughly four years and nine months after the injury was sustained. In response, Robinson contends that § 763a of Title 46 does not apply to his maintenance and cure claim and that his remaining claims are saved by operation of equitable tolling principles. I address Robinson's general maritime claims first and then his maintenance and cure claim.

According to Robinson: "In an admiralty case, a defendant is equitably estopped from asserting a limitations defense when his intentional conduct induced an ignorant party to act to his detriment as regards timely filing of a claim." (Pl.'s Opp'n Mem., Docket No. 19, at 9, citing Clauson v. Smith, 823 F.2d 660 (1st Cir. 1987).) This invocation of equity requires the proof that Prior's conduct was such as to induce Robinson to change his position, reasonably and in good faith, to his detriment. Clauson, 823 F.2d at 662. Under the circumstances alleged in this case, Prior's conduct must have been "so misleading as to cause [Robinson's] failure to file suit." Id. (quoting Sanchez v. Loffland Bros. Co., 626 F.2d 1228, 1231 (5th Cir. 1980)). Restated another way, "[s]ome definite, unequivocal behavior must be shown—conduct fairly calculated to mask the truth or to lull the unsuspecting person into a false sense of security. Equally, it must be demonstrated that the party seeking to enforce an estoppel relied to his detriment on the interdicted behavior." Id. at 663. The standard does not appear to be exacting; the party invoking the court's equitable power must provide enough specifics to make it clear that equity is called for, but neither "generalized discussion" nor "desultory palaver" will suffice. Id. Although the verified allegations concerning Prior's conduct concern "definite, unequivocal behavior" that might well be relied upon by a reasonable person, I am concerned by the absence of any evidence concerning the timing of Prior's alleged conduct.

In <u>Clauson</u>, the First Circuit held that mere discussions about the possibility of a settlement of a seaman's claim were insufficient to bar the defendant's interjection of the statutory bar. <u>Id.</u> However, some of the statements that Robinson attributes to Prior are significantly more suitable for an application of equitable tolling. Robinson's verified amended complaint, the equivalent of sworn testimony, asserts that he was twice promised valuable consideration in exchange for forbearance in the pursuit of his maritime remedies.[2] In my view, these verified statements, which are unopposed at this stage, offer the kind of direct evidence of misleading conduct and reliance that the rule requires. However, there is a complete absence of any indication as to when the alleged representations were made. For instance, it would be entirely consistent with the verified allegations for Prior to have made both the alleged statements and the alleged monetary contribution toward Robinson's medical bills within the first year following Robinson's injury.[3] If two years subsequently passed (years two and three) without any further performance by Prior, then I, for one, would be extremely reluctant to find justifiable Robinson's continued reliance for a period of two more years (years four and five) before instituting this action. <u>See</u> <u>Wilson v. United States Gov't</u>, 23 F.3d 559, 561 (1st Cir. 1994) (indicating that, where the complainant fails to exercise "due diligence" in preserving his rights, "courts are reluctant to apply principles of equitable tolling to extend a federal limitations period," and quoting <u>De Casenave v. United States</u>, 991 F.2d 11, 13 (1st Cir. 1993)). Ultimately, of course, it is for the court to decide whether these alleged circumstances are sufficiently moving to warrant an equitable remedy that is ordinarily to be allowed "only sparingly." <u>Id.</u> My

---

[2] I am not of the opinion that Prior's alleged request that Robinson sign a waiver or his alleged threat to harm any seaman who would pursue a claim against him, allegedly made sometime prior to Robinson's injury, would be sufficient in themselves to justify equitable tolling.

[3] Robinson might well interject that, because the current dispute arises out of a motion to dismiss, the court ought to draw factual inference against Prior and in favor of Robinson. However, in opposition to Prior's motion Robinson seeks an equitable remedy and, thus, the burden of persuasion falls squarely on Robinson to demonstrate the appropriateness of the court's exercise of equitable power. <u>See</u> <u>Clauson</u>, 823 F.2d at 663 (citing <u>Ross v. Comm'r of Internal Revenue</u>, 169 F.2d 483, 496 (1st Cir. 1948)).

recommendation is, accordingly, circumscribed. In my view, the court would act well within its discretion to deny the motion to dismiss and require further evidentiary submissions on the issue at some later time after the answer to the amended complaint has been filed.

As for the maintenance and cure claim (count III), precedent demonstrates that such a claim is "ongoing." In other words: "The obligation continues to vest until the incapacity is, from a medical standpoint, declared permanent (and an optimum cure effected)." Id. at 661 n.1. Robinson's amended complaint asserts that he has not yet reached "maximum medical improvement." (Amended Compl. ¶ 29.) Therefore, his maintenance and cure claim is ongoing and Prior's motion to dismiss is not dispositive of that claim in any event. Still, there remains the possibility that the court might foreclose that portion of the claim that is premised upon medical treatment administered beyond what would otherwise be considered a reasonable limitation period.

According to Robinson, he should be permitted to recover for the entirety of his maintenance and cure because his roughly five-year delay in pursuing his rights is excusable and did not prejudice Prior. (Pl.'s Opp'n Mem. at 5.) The timeliness of a maintenance and cure claim depends on the equitable principles of laches. McKinney v. Waterman S.S. Corp., 925 F.2d 1, 2-3 (1st Cir. 1991). The burden of proving or disproving timeliness may fall on either party. Id. at 3. The general rule is that there is a presumption of laches whenever the action is commenced after the most "analogous statutory period," which presumption must be overcome by the plaintiff, and that otherwise the burden of proving laches falls on the defendant. Id. There appears to be an open question in this Circuit whether the analogous statutory period is set by 46 U.S.C. § 763a or by the most analogous state law of limitation. See id.; see also Butler v. Am. Trawler Co., 887 F.2d 20, 21-22 (1st Cir. 1989) (indicating assent to the proposition that

6

Congress intended § 763a "to preclude the operation of different state limitations statutes in respect to maritime torts" and to "deal with the problem of non-uniformity").  Robinson maintains that the court ought to use Maine's six-year limitation period for contract claims as the benchmark for evaluating the timeliness of his maritime maintenance and cure claim because a maintenance and cure claim is generally understood to arise out of a contractual obligation or duty.  (Pl.'s Opp'n Mem. at 6-7 & n.1.)  The presentation Robinson makes in support of a finding of timeliness is in all respects identical to his presentation for an exercise of equitable estoppel.  Should the court ultimately decide to bar Robinson's other maritime claims based on the three-year limitation period of § 763a, it could also bar Robinson's maintenance and cure claim to the extent it seeks maintenance and cure predating April 27, 2003, the third anniversary of the underlying accident, if it concludes that the § 763a limitation applies.

## Conclusion

For the reasons stated herein and based on the early stage of the pleading process and the sparseness of the allegations and the responses thereto, I **RECOMMEND** that the court exercise its discretion by **DENYING** the motion to dismiss.  This recommendation addresses only counts I and II and a portion of count III.[4]  Defendant's motion does not mention counts IV through VIII and those issues have not been addressed in the recommended decision.

## NOTICE

---

[4]   Neither party addresses the impact of the motion to dismiss on counts V and VII (the contract/promissory estoppel claims).  My initial impression is that these claims would persist on the docket even if the motion is granted as to the Jones Act claim and the "unseaworthiness" claim because they are state law claims over which the court's jurisdiction is "pendent" to the maintenance and cure claim.  The legal and factual basis for count IV (punitive damages/attorney fees) is not apparent from the amended complaint, but it would appear that claim would persist as well, along with the "equitable estoppel" claim recited as count VI.  Finally, it appears (based on a very cursory analysis) that a maintenance and cure claim is independently capable of supporting an *in rem* proceeding against the *Karrie N* (count VIII).  See Pratt v. United States, 340 F.2d 174, 177-79 & n.11 (1st Cir. 1964).

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.


/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

Dated May 6, 2005